IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**FAIRPORT ASSET MANAGEMENT**                                **PLAINTIFF**
**REO 2, LLC**

**V.**                                  **NO. 4:25-CV-52-DMB-DAS**

**MELVIN S. CLANTON FARM,**
**MELVIN SCOTT CLANTON, and**
**ANDREA DOLER CLANTON**                                 **DEFENDANTS**

**ORDER**

Fairport Asset Management REO 2, LLC, as Regions Bank's assignee, seeks a default judgment against the defendants for breach of contract. While a default judgment is procedurally warranted, the pleadings establish a sufficient basis for its entry, and the default judgment amounts sought are supported by evidence except for the post-judgment interest rate, the motion for default judgment will be granted in part and denied in part.

**I**
**Procedural History**

On April 30, 2025, Regions Bank filed a complaint in the United States District Court for the Northern District of Mississippi[1] against Melvin S. Clanton Farm ("Farm"), Melvin Scott Clanton, and Andrea Doler Clanton, asserting breach of contract claims and an alternative unjust enrichment claim based on allegations that the defendants defaulted on two separate loans. Doc. #1. On its breach of contract claims, Regions sought a judgment against the defendants on Loan 1 for "$203,516.31, together with all accrued and accruing interest, late fees, and all other recoverable fees, costs, charges, and expenses, including, without limitation, attorney's fees and expenses incurred by [it] in collecting this indebtedness;" and on Loan 2 for "$426,740.30, together

---
[1] The complaint alleged diversity jurisdiction under 28 U.S.C. § 1332. Doc. #1 at 2.

with all accrued and accruing interest, late fees, and all other recoverable fees, costs, charges, and expenses, including, without limitation, attorney's fees and expenses incurred by [it] in collecting this indebtedness." *Id.* at 10–11, 12, 13, 14.

On May 20, 2025, Regions filed a motion for a preliminary injunction "requiring [the defendants] to cooperate with [it] to allow for and coordinate a time for [its] equipment and environmental vendors to review and inspect certain Real Property Collateral and Equipment Collateral." Doc. #2 at PageID 124. No response to the preliminary injunction motion was filed.

On August 29, 2025, the Clerk of the Court entered a default against the Farm and Melvin on Regions' motion.[2] Docs. #9, #11. On September 22, 2025, also based on Regions' motion, the Clerk of the Court entered a default against Andrea. Docs. #12, #13.

Regions filed a motion for a default judgment against all defendants on October 8, 2025. Doc. #15. No response to the motion for default judgment was filed.

On December 17, 2025, the Court, on motion by Fairport Asset Management REO 2, LLC, substituted Fairport as the plaintiff in place of Regions based on Fairport's representations that Regions assigned the loans to it.[3] Doc. #18; Text Order, Dec. 17, 2025, Dkt. No. 19. To date, none of the defendants have appeared in this case.

## II
## Analysis

Pursuant to "Rule 55 of the Federal Rules of Civil Procedure, federal courts have the

---

[2] To avoid confusion, the Court uses the first names of the individual defendants.

[3] In the motion to substitute, Fairport also stated that it "renews" Regions' motion for entry of default judgment. Doc. #18 at 2. There was no need for it to do so. Under Mississippi law, "the right to receive money due or to become due under an existing contract may be assigned." *Merchs. & Farmers Bank of Meridian v. McClendon*, 220 So. 2d 815, 821 (Miss. 1969). Thus, "[a]ssigned contractual rights may be enforced by the assignee—who essentially 'stands in the shoes' of the assignor and who 'takes no rights other than those' which the assignor had possessed." *Great S. Nat'l Bank v. McCullough Env't Servs., Inc.*, 595 So. 2d 1282, 1287 (Miss. 1992) (quoting *Indian Lumbermen's Mut. Ins. Co. v. Curtis Mathes Mfg. Co.*, 456 So. 2d 750, 755 (Miss. 1984)). Since Regions assigned its rights in the two loans to Fairport, Fairport may properly seek, and be awarded, all default damages that would have been due Regions.

2

authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (quoting FED. R. CIV. P. 55(a)–(b)). However, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default," *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996), because "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations," *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). "Generally, the entry of default judgment is committed to the discretion to the district judge." *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

Under Fifth Circuit law, the three steps to obtaining a default judgement include (1) default by the defendant, (2) clerk's entry of default, and (3) entry of default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). The first two steps have been satisfied here. Thus, the only issue left to consider is whether default judgment should be entered. In making this determination, the Court conducts a three-question analysis: (1) "whether the entry of default judgment is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of relief, if any, the plaintiff should receive." *J & J Sports*, 126 F. Supp. 3d at 814.

### A. Procedural Justification

In determining whether a default judgment is procedurally warranted, a court should consider (1) "whether material issues of fact are at issue;" (2) "whether there has been substantial prejudice;" (3) "whether the grounds for default are clearly established;" (4) "whether the default was caused by a good faith mistake or excusable neglect;" (5) "the harshness of a default judgment;" and (6) "whether the court would think itself obliged to set aside the default on the

3

defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, where as here, a party fails to respond to or answer the complaint, there are no material issues of fact at issue. *See Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 753 (N.D. Tex. 2020) ("[B]ecause Eltman has not filed any responsive pleading, there are no material facts in dispute.").

Second, the defendants' failure to respond causes prejudice to Fairport because it "threatens to bring the adversary process to a halt, effectively prejudicing [Fairport's] interests." *Id.* (quoting *Ins. Co. of the W. v. H&G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (internal quotation marks omitted).

Third, as mentioned above, the grounds for default (default and entry of default) have been clearly established.

Fourth, there is no evidence before the Court that the "default was caused by a good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893.

Fifth, none of the defendants filed an answer or otherwise appeared to defend themselves in this case, despite having been served with process. Docs. #7, #8, #10. Neither the Farm, Melvin, nor Andrea have attempted to set aside the default since they were defaulted. Although default judgment is a harsh remedy, "failure to file a responsive pleading or otherwise defend the instant lawsuit mitigates the harshness of a default judgment." *KLLM Transp. Servs., LLC v. Green Line Trucking, Inc.*, No. 1:24-cv-149, 2025 WL 2601556, at *2 (N.D. Miss. Sep. 8, 2025) (quoting *EW Polymer Grp., LLC v. GSX Int'l Grp., Inc.*, 622 F. Supp. 3d 232, 237 (M.D. La. 2022)) (internal quotation marks omitted).

Finally, should the defendants later seek to challenge the default, the Court is unaware of any facts that would make it "obliged to set aside the default." *Lindsey*, 161 F.3d at 893.

Considering these factors, all weigh in favor of a default judgment being procedurally warranted in this case.

### B. Sufficient Basis in Pleadings

"In light of the entry of default, [the Farm, Melvin, and Andrea] are deemed to have admitted the allegations set forth in [the] Complaint." *J & J Sports*, 126 F. Supp. 3d at 815. However, when reviewing a request for a default judgment, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (alteration in original) (quoting *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Addressing the "sufficient basis in the pleadings" requirement, the Fifth Circuit has stated:

> Despite announcing that a default judgment must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings, the *Nishimatsu* court did not elaborate on these requirements. … and we have found no guidance in our own cases. Nevertheless, we draw meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint.
>
> Rule 8(a)(2) requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds upon which it rests. The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). Detailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation.

*Id.* at 498 (cleaned up).

#### 1. Factual allegations

On May 19, 2020, Regions Bank made a loan to Melvin S. Clanton Farm in the amount of $470,000.00 ("Loan 1"). Doc. #1 at 2. The terms of Loan 1 provided (1) the Farm was to make annual payments in the amount of $109,309.46; (2) each annual payment was to be made on May 19 of each year; (3) the Farm would be charged an extra amount if its payment was ten or more

days late; (4) Regions was entitled to demand repayment of attorneys' fees and expenses incurred by it to help collect the owed amounts; (5) the loan must be repaid in full by May 19, 2025; and (6) in the event of default, Regions may declare the entire unpaid balance immediately due. *Id.* at 2–3. The Farm conveyed to Regions a security interest in all of its farm equipment as collateral for the loan, and both Melvin and Andrea guaranteed the loan and agreed to pay upon demand all of Regions' costs and expenses, including Regions' attorneys' fees and legal expenses, incurred in connection with Loan 1's enforcement. *Id.* at 3–4.

On July 14, 2020, Regions made a second loan to the Farm in the amount of $500,000.00 ("Loan 2"). *Id.* at 4–5. The terms of Loan 2 provided (1) the Farm was to make annual payments in the amount of $47,360.57; (2) each annual payment was to be made on July 14 of each year; (3) the Farm would be charged an extra amount if its payment was ten or more days late; (4) Regions was entitled to demand repayment of attorneys' fees and expenses incurred by it to help collect the owed amounts; (5) the loan must be repaid in full by July 14, 2025; and (6) in the event of default, Regions may declare the entire unpaid balance immediately due. *Id.* at 5. For Loan 2, Melvin and Andrea conveyed to Regions a security interest in their property in Calhoun County, Mississippi, and their property in Webster County, Mississippi, and agreed to continue paying all taxes, special taxes, assessments, and charges levied on or against these properties. *Id.* at 5–6. Further, they both guaranteed the loan and agreed to pay upon demand all Regions' costs and expenses, including Regions' attorneys' fees and legal expenses, incurred in connection with Loan 2's enforcement. *Id.* at 6–7.

On May 19, 2024, the Farm failed to make the annual payment for Loan 1. *Id.* at 7. On June 13, 2024, Regions sent the Farm written notice of Loan 1's default and demanded immediate payment in full of all past due amounts under Loan 1. *Id.* On July 29, 2024, Regions sent another

6

written notice stating that it would accelerate Loan 1 if the default was not cured within ten days. *Id.* at 8. After the defendants failed to cure the Loan 1 default, Regions sent written notice on August 21, 2024, that it accelerated Loan 1. *Id.* As of April 29, 2025, the total outstanding balance of Loan 1 was $203,516.31. *Id.* at 9.

The Farm also defaulted on Loan 2 by failing to timely pay taxes on the real property located in Webster County as per Loan 2's terms. *Id.* at 7. On May 8, 2024, Regions sent the Farm written notice of Loan 2's default and requested the property taxes on the Webster County property be paid immediately. *Id.* Further, on July 14, 2024, the Farm failed to make the annual payment on Loan 2. *Id.* at 8. On July 29, 2024, Regions sent another written notice stating that it would accelerate Loan 2 if the defaults were not cured within ten days. *Id.* While the defendants cured the first default by paying off the past-due real estate taxes on the Webster County property, they failed to cure the second default, and Regions sent written notice on August 21, 2024, that it accelerated Loan 2. *Id.* at 8, 9. As of April 29, 2025, the total outstanding balance of Loan 2 was $426,740.30. *Id.* at 9.

### 2. Claims

The complaint asserted breach of contract claims against the defendants for the Loan 1 and Loan 2 defaults and, in the alternative, an unjust enrichment claim.[4]

To establish a breach of contract claim under Mississippi law,[5] a plaintiff must show "(1)

---

[4] Since the Court concludes that the pleadings support the breach of contract claims, it need not address the alternative unjust enrichment claim.

[5] Loan 1 contains a provision stating that, except with respect to interest, "[it] will be governed by federal law applicable to [Regions] and, to the extent not preempted by federal law, the laws of the State of Mississippi." Doc. #1-1 at 2. Loan 2 includes the same provision. Doc. #1-6 at 2. And because the complaint was filed in federal court based on diversity jurisdiction, Mississippi substantive law would apply regardless. *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014). "To determine issues of state law, [federal courts] look to final decisions of the state's highest court, and when there is no ruling by that court, then [they] have the duty to determine as best [they] can what the state's highest court would decide." *Westlake Petrochems., L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 238 n.5 (5th Cir. 2012).

7

the existence of a valid and binding contract, and (2) … that the defendant has broken, or breached it." *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 991 (Miss. 2021) (internal quotation marks omitted) ) (quoting *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018)). A contract exists when six elements are present: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *White v. Jernigan Copeland Att'ys, PLLC*, 346 So. 3d 887, 896 (Miss. 2022) (emphasis omitted) (quoting *Hattiesburg Health & Rehab Ctr., LLC v. Brown*, 176 So. 3d 17, 21 (Miss. 2015)).

As to both contracts with the Farm, the complaint alleged an agreement between Regions and the Farm (two or more contracting parties) specifying that Regions provided the Farm loans in exchange for the Farm paying back the loans at a specified interest rate (consideration). Attached to the complaint are the contracts between Regions and the Farm—which contracts provide definite terms for the loan agreements, interest rates, and payment plans—and all parties accepted and agreed to their terms. Docs. #1-1, #1-6. There is no indication any party lacked capacity to contract. *See Manhattan Nursing & Rehab. Ctr., LLC v. Hollinshed*, 341 So. 3d 991, 993 (Miss. Ct. App. 2022) ("The law presumes a person sane and mentally capable to enter a contract. The burden is upon the party seeking to avoid an instrument on the ground of insanity or mental capacity to establish it by a preponderance of proof.") (quoting *Frierson v. Delta Outdoor Inc.*, 794 So. 2d 220, 224 (Miss. 2001)) (internal alteration omitted). Finally, the Court is unaware of any legal prohibition precluding contract formation in this case. Accordingly, valid contracts for both loans and their breach by the Farm has been established.

Because "[a] guaranty is merely a particular type of contract," the same elements apply to Regions' relationship with Melvin and Andrea, who acted as guarantors for both loans. *Helena*

*Chemical Co. v. Willis*, No. 4:94-cv-108, 1996 WL 672090, at *2 (N.D. Miss. Sep. 5, 1996) ("Under Mississippi law, a guaranty contract is governed by the same laws which govern all contracts."). As to its claims against Melvin, the complaint (1) alleged an agreement between Regions and Melvin (two or more contracting parties); (2) specified that Regions provided loans to the Farm in exchange for Melvin guaranteeing the loan's repayment with interest (consideration); and (3) attached the contracts between Regions and Melvin, which show that the guaranty agreements provided definite terms and that both parties accepted and agreed to those terms. Docs. #1-4. #1-9. Further, there is no indication that Regions or Melvin lacked capacity to contract, and the Court is unaware of any legal prohibition precluding contract formation between them. Thus, there is a basis in the pleadings to support the breach of contract claims against Melvin.

The same is true for the contracts between Regions and Andrea. The complaint (1) alleged an agreement between Regions and Andrea (two or more contracting parties); (2) specified that Regions provided loans to the Farm in exchange for Andrea guaranteeing the loans' repayment with interest (consideration); and (3) attached the contracts between Regions and Andrea, which show that the guaranty agreements provided definite terms and that both parties accepted and agreed to those terms. Docs. #1-5, #1-10. There is also no indication that Regions or Andrea lacked capacity to contract, and the Court is unaware of any legal prohibition precluding contract formation between them. So there is a basis in the pleadings to support the breach of contract claims against Andrea.

### C. Form of Relief

"A default judgment establishes the defendant's liability but not the quantity of damages." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019). Rather, "the burden of

establishing damages rest[s] squarely and solely on [the plaintiff]." *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011).

Fairport seeks (1) "[u]npaid principal in the amount of $630,256.61;" (2) "[a]ccrued but unpaid interest as of September 26, 2025 in the amount of $71,622.74;" (3) "[i]ncurred but unpaid late charges as of September 26, 2025 in the amount of $7,833.49;" (4) "[c]ontinuing interest from September 26, 2025 to the date of judgment in the amount of $85.98547 per diem;" (5) "[a]ttorneys' fees as of September 26 2025 in the amount of $105,690.37;" (6) "[a]ttorney costs as of September 26, 2025 in the amount of $6,240.88;" (7) "[p]ost-judgment interest at the contractual rate;" (8) "[p]ost-judgment costs of collection, including attorneys' fees in collecting and enforcing the judgment;" and (9) "[s]uch other and further relief as this Court deems just and proper." Doc. #15 at 2. In support of these amounts, Fairport relies on an affidavit by Chris Rowell, "a Vice-President with Regions," and an affidavit by Glenn E. Glover, "a partner in the law firm of Bradley Arant Boult Cummings LLP … and one of the attorneys of record for … Regions." Doc. #15-1; Doc. #15-2 at PageID 315.

### 1. Loan 1 balance

Rowell attests that "[t]he amounts due and payable on Loan 1 as of September 26, 2025 includes, exclusive of attorneys' fees and costs" include (a) "[u]npaid principal in the amount of $203,516.31;" (b) "[a]ccrued but unpaid interest in the amount of $26,237.17;" and (c) "[i]ncurred but unpaid late charges in the amount of $5,465.47;" and that "[i]nterest continues to accrue on Loan 1 at the rate of $29.67946 per diem." Doc. #15-1 at 6. Considered with the documents attached to the complaint and in the absence of any contradictory evidence from the defendants, the damages for Loan 1 in the amounts specified are supported by the record. *See Gross v. RSJ Int'l, LLC*, No. 11-73, 2012 WL 729955, at *5 (E.D. La. Mar. 6, 2012) ("Even where [a] prayer

for damages rests upon [a party's] own affidavit, … the showing of damages is sufficient, absent any evidence to the contrary."). Accordingly, damages in that amount will be awarded to Freeport.

### 2. Loan 2 balance

Rowell attests that "[t]he amounts due and payable on Loan 2 as of September 26, 2025, includes, exclusive of attorneys' fees and expenses" include (a) "[u]npaid principal in the amount of $426,740.30;" (b) "[a]ccrued but unpaid interest in the amount of $45,385.57;" and (c) "[i]ncurred but unpaid late charges in the amount of $2,368.02;" and "[i]nterest continues to accrue on Loan 2 at the rate of $56.30601 per diem." Doc. #15-1 at 6. Considered with the documents attached to the complaint and in the absence of any contradictory evidence from the defendants, the damages for Loan 2 in the amounts specified are supported by the record. Thus, damages in that amount will be awarded to Freeport.

### 3. Post-judgment interest

"Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Generally, "[i]n diversity cases, federal law controls the award of post-judgment interest, including decisions about when postjudgment interest begins to accrue."[6] *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d, 408, 419 (5th Cir. 2017) (quoting *Art Midwest, Inc. v. Clapper*, 805 F.3d 611, 615 (5th Cir. 2015)); *see Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456–57 (5th Cir. 2013) ("Postjudgment interest is not discretionary, but 'shall be calculated from the date of the entry of the judgment, as a rate equal to the weekly average 1-year constant maturity Treasury yield.'") (quoting 28 U.S.C. § 1961(a)). However, "[a] contract can validly establish a different rate, but it 'must do so using clear, unambiguous, and unequivocal

---

[6] Loan 1 provides, "With respect to interest (as defined by federal law) this Note will be governed by federal law applicable to [Regions] and, to the extend not preempted by federal law, the laws of the State of Alabama." Doc. #1-1 at 2. Loan 2 contains the same provision. Doc. #1-6 at 2.

11

language.'" *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 593 F. App'x 300, 305 (5th Cir. 2014) (quoting *Tricon Energy*, 718 F.3d at 458–59).

Though Fairport seeks "[p]ost-judgment interest at the contractual rate," Doc. #15 at 2, it does not point to any contractual provision upon which that request is based. And based on the Court's review, it appears neither Loan 1 nor Loan 2 contains such a provision much less one that clearly, unambiguously, and unequivocally states a post-judgment interest rate. Given this, Fairport will be awarded post-judgment interest at the statutory rate.

### 4. Attorneys' fees and expenses

Where attorneys' fees are authorized by contract under applicable law, the Court may award such fees. *See Norris v. Causey*, 869 F.3d 360, 373 (5th Cir. 2017) (contract agreement between parties allows for recovery of reasonable attorneys' fees). Mississippi law authorizes attorneys' fees in breach of contract cases when there is a provision for such in the contract. *Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 164 (Miss. 2011). An award of attorneys' fees must be reasonable. *Weaver v. Ross*, 391 So. 3d 1240, 1248 (Miss. Ct. App. 2024). Reasonableness may be determined by calculating "the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate."[7] *Tupelo Redev. Agency v. Gray Corp.*, 972 So. 2d 495, 522 (Miss. 2007).

Here, the relevant contracts allow for attorney's fees as well as expenses. Doc. #1-1 at 2;

---

[7] Under Mississippi law, "certain factors should be considered when determining whether attorneys' fees are reasonable and … the trial court should make specific factual findings with regard to those factors." *Cavagnaro v. Coldwell Banker Alfonso Realty, Inc.*, 995 So. 2d 754, 766 (Miss. Ct. App. 2008). Those factors are "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent." MISS. RULES OF PRO. CONDUCT r. 1.5.

Doc. #1-6 at 2. As for the amount of fees sought, Glover's affidavit includes a chart summarizing the total fees for the services Bradley Arant Boult Cumming LLP ("Bradley") provided Regions, including for each person who worked on the case the name and title, hourly rate, number of hours expended, and total fee. Doc. #15-2 at PageID 319. Glover's affidavit also includes a chart itemizing expenses. *Id.* According to Glover, these fees and expenses "are the type normally billed to clients for these services" and were calculated using the same discretion and billing judgment that Bradley uses when billing all regular clients of the firm; "[he is] familiar with the fees customarily charged to clients having businesses similar to that of [Regions] by law firms in Mississippi in connection with matters of the same or similar nature;" "[a]s of September 26, 2025, the total fees and expenses incurred by [Regions] for services rendered by Bradley in connection with the collection of the Loans … amounted to $105,690.37;"[8] "[t]he total attorneys' fees incurred as of September 26, 2025 is less than fifteen percent (15%) of the aggregate sum outstanding on the Loans;" and "[b]ased on the services rendered to [Regions] in connection with the collection of the Loans, the time expended, expertise required, amount of indebtedness being collected and rates customarily charged, [he is] of the opinion that Bradley's fees and expenses for services rendered to [Regions] are reasonable." Doc. #15-2 at PageID 316, 318.

Based on the Court's review of the record, the specified hourly rates and the number of hours spent litigating this case are reasonable, especially given the $630,256.61 unpaid principal

---

[8] These services included "(a) reviewing and analyzing the Loan Documents; (b) performing due diligence with respect to the Loan Documents; (c) ordering and reviewing title updates for the real property collateral securing the Loan Documents; (d) ordering UCC updates for the personal property collateral securing the Loan Documents; (e) preparing and sending notices of default and demand for payment to the Defendants; (f) preparing and sending notices of acceleration to the Defendants; (g) preparing for foreclosure of the real property collateral securing the Loan Documents; (h) prepared for recovery of the personal property collateral securing the Loan Document; (i) obtaining appraisals of the real property and personal property collateral securing the Loan Documents; (j) discussing the Loan Documents with two attorneys consulted but not engaged by Defendants; (k) preparing and filed the Complaint and other documents in this lawsuit; and (l) attempting to serve the Defendants." Doc. #15-2 at PageID 317.

amount owed on the loans.[9] *See Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95, 97 (5th Cir. 1972) ("The determination of a reasonable attorney's fee is left to the sound discretion of the trial judge.").[10] Fairport will be awarded the requested attorneys' fees and expenses specified.

## III
## Conclusion

Based on the above:

1. The motion for default judgment [15] is **GRANTED in Part and DENIED in Part**. It is GRANTED such that a default judgment will be entered against the defendants for $630,256.61 in unpaid principal; $71,622.74 in unpaid interest; $7,833.49 in unpaid late charges; interest from September 26, 2025, through the date of judgment at the rate of $85.98547 per diem; $105,690.37 in attorney's fees; $6,240.88 in expenses; and post-judgment interest at the statutory rate. The motion is DENIED without prejudice in all other respects. A separate judgment will be issued.

2. The motion for preliminary injunction [2] is **DENIED as moot.**

**SO ORDERED**, this 30th day of January, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[9] The Mississippi Supreme Court has "traditionally approved as reasonable awards of attorneys' fees in collection matters in the amount of one-third of the indebtedness." *Dynasteel Corp. v. Aztec. Indus., Inc.*, 611 So. 2d 977, 986 (Miss. 1992) (one-third fee for indebtedness presumptively reasonable but still subject to evaluation under "common factors for determining reasonableness of attorney's fee award."). The attorneys' fees that Fairport requests here are well under one-third of the amount owed.

[10] As to the factors listed above, factors 1, 3, 4, and 8 weigh in favor of a finding of reasonableness; factors 2, 6, and 7 are neutral because no information was provided to evaluate them; and factor 5 is irrelevant to this case as there is no evidence Regions imposed any time restraints on the attorneys at Bradley.